DUNCAN v. MALCOMB.

2487                                          351 S. W. 2d 419

Opinion delivered November 13, 1961.

[Rehearing denied December 18, 1961.]

*J. B. Reed,* for appellant.

*W. M. Lee,* for appellee.

CARLETON HARRIS, Chief Justice.    On September 17, 1957, R. H. Duncan and Vivian Duncan, his wife, owners of certain lands in the southern district of Prairie County, and which embraced a body of water known as Horseshoe Lake, entered into a lease contract with W. S. Malcomb, appellee herein. The term of the instrument was for ten years from January 1, 1958, with an optional renewal right for a period of ten years. Appellee entered into possession of the lands on January 1, 1958, and has continuously occupied same since that time. The agreement set the rental for the premises at $200 per year,

payable annually on January 1 of each year, and allowing a grace period of thirty days. The lease provided for the forfeiture of possession by appellee upon his failure to pay rent when due.

In 1958, Malcomb paid $100 on the rent in January, but did not pay the other $100 until the latter part of November, and in 1959, he paid the full rent of $200 in the middle of July. In the latter part of March, 1960, Duncan sent word to Malcomb to come to his store in Biscoe, and appellee arrived at the store on March 30th. According to Duncan, he demanded his 1960 rent, and appellee replied that he did not have it. This appellant then told appellee that he had already waited three months, and was declaring the lease null and void. Duncan then handed Malcomb a written notice declaring the lease cancelled. Appellee testified that no demand for the rent was made by Duncan on the occasion of going to the store. "That was the first time that I had saw Mr. Duncan in the year 1960 and when he told me that he was going to forfeit the lease, he did not ask me anything about the money at all. He asked if the boy was going to move the boats back down there and I told him they would on Friday and he told me he was going to forfeit the lease. 'Here it is the middle of March and I have not received my money yet.' " Malcomb left the store, obtained the money, and according to his evidence, returned to the store, but Duncan had left. He then took the full amount of money to Mrs. Duncan, who, so he stated, accepted it, and said that she would later give him a receipt. This testimony was disputed by Mrs. Duncan, who testified that she simply took the money as an accommodation to Malcomb, and explained that she would see her husband and find out what he "wants to do about it." She stated that her husband would not accept the money, and she so advised Malcomb, but the latter told her "let the old man cool down", and "keep it until morning", but that Malcomb did not return.[1]

---

[1] The amount given Mrs. Duncan was $203, the $3.00 being given voluntarily by Malcomb as interest. Three dollars interest had also been paid voluntarily by Malcomb on the 1959 rent. The $203 was subsequently placed in the registry of the court.

Suit was instituted by appellants in the Prairie County Chancery Court praying that the lease contract be declared breached by the appellee; that same be declared null and void, and that Malcomb be ordered to vacate the premises and deliver possession to appellants. Malcomb answered asserting that the 1960 rent had been paid, and by amendment to his answer, pleaded estoppel, ''That lessor on several occasions by words and conduct, told lessee that he was behind him one hundred percent in the development of the leased premises and for him not to worry, and other words and actions to that effect, led lessee to believe that he would not enforce a forfeiture provided for in lease and therefore plaintiff is equitably estopped from seeking to avail himself of a forfeiture for the non-payment of rent as provided for in the lease.'' On hearing, the complaint was dismissed, the $203 on deposit in the registry of the court ordered paid to Duncan, and a decree entered accordingly. From such decree, comes this appeal.

While the trial court did not give its reason for dismissing the complaint, such action was apparently based on a finding that Duncan, by his conduct, waived the requirement for prompt rental payments, and was therefore not entitled to the forfeiture (at least, that is the contention advanced and strongly argued by appellee). Of course, it is elementary that equity abhors forfeitures, and in one of our more recent cases, *Vernon* v. *McEntire*, 232 Ark. 741, 339 S. W. 2d 855, we quoted from 1 Pomeroy Eq. Jur. 452, as follows:

''If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.''

In the cause before us, Malcomb testified that in December, 1957, he told Mr. Duncan that he would have to borrow the money to pay the first rent, and that Duncan told him not to worry about it; ''he was behind me one

hundred percent on that thing, just so I got the money paid, not to worry about it being paid on the first day. The second year came up and the same story. We had a conversation and he repeatedly told me not to worry about that, pay it when I could.'' Appellee contends that Duncan waited until he (appellee) had made valuable improvements on the property, and then deliberately declared the forfeiture in order to gain repossession of the improved premises.[2] Duncan denied both the testimony and contention of Malcomb, stating that he was only interested in obtaining his rent, and had frequently made demand for same.

Irrespective of the testimony by the parties, we think the conduct of Duncan clearly establishes that he waived prompt payment of the rent. Admittedly, he accepted the 1958 and 1959 rent from seven to eleven months late, including interest for the latter year. In *Pierce* v. *Kennedy,* 205 Ark. 419, 168 S. W. 2d 1115, this court quoted from § 894 of the chapter on Landlord and Tenant, 32 Am. Jur., page 757 as follows:

''A court of equity, even in the absence of special circumstances of fraud, accident, or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee. The grounds upon which a court of equity proceeds in this connection are: That the rent is the object of the parties, and the forfeiture only an incident intended to secure its payment; that the measure of damages is fixed and certain; and that when the principal and interest are paid, the compensation is complete. This relief may be granted where there is a mere power of re-entry, and it has been granted in various situations.

Of course, the fact that Duncan had previously accepted late payments of the rent, did not preclude him from enforcing the forfeiture provision contained in the lease, in the future, provided that *he first gave reason-*

---

[2] The property concededly had been improved, though the extent of the improvements or cost of same is not in the record.

*able notice to appellee of his intention to cancel the lease if the rent were not paid on time.*

In 31 ALR 2d 377, we find: "Where a lessor, for several rent installment periods, consistently with a settled course of dealing, accepts overdue payments of rent without warning or notice to the lessee of objections to tardiness, he cannot summarily terminate the lease for such default even though the right to do so is granted by the terms of the lease, and the lessee is entitled to appropriate relief in a proceeding to enjoin termination of the lease therefor and the lessor from taking possession of the premises."[3] Quoting further: "Although a lease specifically gives the lessor the right to declare a forfeiture of the term for nonpayment of rent when due and provides that the lessee waives his right to notice of an election by the lessor to do so, a settled course of dealing whereby rent is accepted on or before the tenth of the month instead of on the first, as provided by the lease, can be construed only as a waiver by the lessor of his right to prompt payment, and he cannot predicate a forfeiture upon failure to pay on the first without first having notified the lessee that thereafter strict conformance in the matter will be expected."[4]

It is undisputed that no notice was given to Malcomb that Duncan expected prompt payment of the 1960 rent. In fact, both parties agreed that the 1960 rent had not been discussed prior to March 30th. It is noticeable, that Duncan, in sending word to Malcomb that he wanted to see him, did not state that he would be expecting the payment of the rent. It is also noteworthy that Duncan already had his written notice prepared to give to Malcomb before the latter arrived. This lends credence to appellee's statement that no demand was made on that occasion, but only a demand for the repossession of the lands.

In accordance with the reasoning herein set out, we are unable to say that the Chancellor erred and the decree is, in all things, affirmed.

[3] *Milbourn* v. *Aska*, 81 Ohio App. 79, 77 N.E. 2d 619.
[4] *Donovan* v. *Murphy*, 217 Ill. App. 31.