GLORIA BECK, appellee, v. VIOLET S. TROVATO, appellant.

No. 52491.

(Reported in 150 N.W.2d 657)

694

MAY 2, 1967.

Henry Wormley and Joseph Z. Marks, both of Des Moines, for appellant.

M. D. Seiser, of Ames, and Isador Robinson, of Des Moines, for appellee.

BECKER, J.—This forcible entry and detainer action is based on nonpayment of rent for the tavern located at Ames, Iowa. By the terms of the written lease monthly rent is to be paid on the eighth day of each month. All references hereinafter will be to the year 1966 unless otherwise noted. The rent check for June was forwarded to plaintiff landlord on June 7. The landlord

through her agent and her attorney presented this check to the Union Trust and Savings Bank, Ames, Iowa, the bank on which it was written, for payment on June 15, the check was dishonored and marked "insufficient funds." It is this failure to honor the June 7 check that constitutes the basis for plaintiff's action for forcible entry and detainer. Three-day notice to quit was served on defendant on the 16th of June. Action was brought in the Municipal Court of Ames on June 24. The trial court found for plaintiff and ordered defendant removed. Defendant appeals.

This is the second round of what appears to be a continuing battle. The significance of round two cannot be determined without an abbreviated replay of round one. To this end the court file of the first action for forcible entry and detainer was introduced into evidence, and is now before us.

The judgment in the first action was not appealed and is binding on the parties here. From that case we learn that the lease in question was entered into between plaintiff Gloria Beck as owner and defendant Violet S. Trovato as assignee tenant on July 8, 1963. The assignment is immaterial here. The rent was $350 per month. The term was three years with a five-year option to renew. While defendant was lessee the actual operation of the tavern was carried on by her son, Frank Trovato. The actions, and failure to act, on the part of Frank are binding on defendant and the actions of both Trovatos will hereinafter be referred to as those of defendant.

Throughout the first two and three quarters years of the lease tenant was often late with the rent and often paid the rent with checks written on an insufficient account; necessitating a bank call for covering funds. However, plaintiff accepted these late payments until the months of April and May 1966.

The original term of the lease expired April 8. Defendant exercised her option to renew. At this time plaintiff wanted to renegotiate the lease, claiming that the advent of liquor by the drink and a large city parking lot assessment justified more rent. Defendant refused to negotiate. During this time the rent check, dated April 11, was held by plaintiff until May 14 at which time she presented both the April and May 8 rent

checks for payment. Both were dishonored. Notice to quit was served and forcible entry and detainer action started.

We should add that defendant claimed there was enough money in the bank on May 14 when the checks were tendered but that the bank (due to a posting system which necessitated action in Des Moines) was a day late in its totals. Later defendant tendered the April and May rent, first by requesting that the checks be put through again, when the funds were clearly sufficient, which plaintiff refused to do, then by proffering the rent in her pleadings and in open court. Both proffers were refused. The original checks were introduced and received in evidence in this first case. The first case was tried on June 6, 1966. On June 9 the court filed its judgment adverse to plaintiff-landlord holding that in light of the previous custom of late payments, plus the uncontradicted evidence that defendant had sufficient credit balance to meet the check, plus the offer to comply, the record was sufficient to balance the scales of equity in favor of defendant and avoid a forfeiture.

Thus the stage was set for the facts giving rise to the present action. On June 7 defendant mailed the June rent check for $350 to plaintiff. On June 15 plaintiff through her father and her attorney went to the Municipal Court Clerk's office and withdrew the April and May checks held there as exhibits in the first case. This was done without order of court and without notice to defendant. Time for appeal had not expired. The two men then proceeded to the bank and presented all three checks, April, May and June, totaling $1050. They were told that the account contained only $1033, and any two but not all three checks would be honored. They cashed the April and May checks, had the June check marked insufficient funds, and served three-day notice to quit on June 16. On June 21 defendant tendered a cash payment of the rent which was refused. On June 24 this action was started. Payment was again tendered in open court and refused.

I. The principles governing this type of case are shortly reviewed in Bentler v. Poulson, 258 Iowa 1008, 1010, 141 N.W.2d 551, 552: "I. This action is in equity and is governed by equitable rules. Although our cases have not said in so many

words that substantial compliance with the terms of a lease will avoid a forfeiture, the language of the cases supports that statement. 'Generally equity is somewhat less strict than law in requiring performance by one who seeks to enforce a contract.' Lautenbach v. Meredith, 240 Iowa 166, 173, 35 N.W.2d 870, 874. 'Equity looks to the substance rather than the form and seeks to prevent injustice.' Cota Plastering Co. v. Moore, 247 Iowa 972, 978, 77 N.W.2d 475, 478. 'Moreover, many of defendants' complaints were of alleged breaches of the lease too minor to warrant its cancellation, had the same been proved.' Weible v. Kline, 251 Iowa 255, 258, 100 N.W.2d 102, 104. We will view the evidence of landlord's complaints with these statements in mind."

Here neither party has much evidence, by virtue of her own acts, for use in tipping the scales of justice her way. Each must rely on the inequitable activities of the other.

■ Defendant has again failed to provide for payment of rent. She cannot rely on plaintiff's prior forbearance. The first effort to oust her was sufficient warning. The effort to explain the shortage at the bank in terms of late posting on the bank's books is equally unacceptable. Whatever may be the merits of this argument (contested by the bank and unreported here in the interest of space), plaintiff was not responsible for the situation. She had a right to expect the bank account would be sufficient to cover the check at any reasonable time after she received it. Plaintiff should not be subjected to repeated rent collection difficulties and need not continue her prior forbearance. On June 11, 12 and 13 defendant's bank balance was insufficient to cover the June check even if the other two checks were withheld. Plaintiff might have presented the check on any of those dates and defendant would have had no claim to inequitable treatment. Hence if plaintiff herself had not overreached in an unusual manner and to a serious degree we would affirm.

■ II. But we cannot approve this judgment granting forcible entry and detainer under these facts. When the two $350 April and May checks were received in evidence, they were in the custody of the court. Defendant had a right to expect that they would not be presented for payment while they were

evidence in the case. We think she and her attorneys also had a right to expect that this evidence would not be withdrawn from the court without order or permission of the presiding judge, and without notice to her. When the June check was in fact presented the cash was there and the check would have been honored except for the prior presentation of the court exhibits.

The trial court did not view the withdrawal of these exhibits without its consent and without notice as unusual or irregular. We do. Plaintiff cannot now insist on the forfeiture of a valuable lease based on failure to meet her own irregular actions. Reference is made to undisputed evidence that $700 had been sequestered at the bank to meet the two exhibit checks. The record does not confirm this finding. The most that can be said is that instructions to place a hold on $700 to pay two rent checks had been given to the banker. He stated that he *assumed* the order referred to the two oldest checks. In any event defendant had a right to assume that the June check could and would be honored when the only other two checks were not in the market place but were in the custody of the court. The bank officials stated they would have honored the June check had the other two checks not been presented first.

Again we find the law in Bentler v. Poulson, supra, peculiarly apropos. "IV. 'It is a familiar saying that equity abhors a forfeiture. Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699, 703 ("* * * forfeitures are not favorites of either law or equity, and when they are enforced those claiming them should show that the equities are clearly on their side.")' Roshek Realty Co. v. Roshek Brothers Co., 249 Iowa 349, 358, 87 N.W.2d 8, 13."

We disapprove defendant's actions but we must disapprove plaintiff's actions to an even greater degree.

The trial court noted its concluding paragraph from the first judgment. "Tenant was warned by the Court, in the first action, that any deviation from the terms of the lease and the payment of the rent would result in a forfeiture." That warning was justified in the earlier case and would ordinarily be honored now. However, it cannot constitute a prejudgment of the facts of this case. Under the peculiar circumstances here

plaintiff has failed to show that the equities are clearly on her side.---Reversed.

All JUSTICES concur except THORNTON, J., not sitting.