Hadley W. STEPHENS, Appellant,

v.

STATE of Alaska, Appellee.

No. 1586.

Supreme Court of Alaska.

Oct. 13, 1972.

Warren W. Matthews, Jr., of Matthews, Dunn & Baily, Anchorage, for appellant.

B. Richard Edwards, Asst. Atty. Gen., John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal raises the single issue of the effect of a non-waiver provision contained in a lease of state school lands. On May 2, 1961, the Division of Lands of the State of Alaska entered into a lease agreement with appellant Hadley Stephens whereby Stephens agreed to lease certain state school lands for 55 years. The lease provided for rent of $304 per quarter, payable in advance of each quarter.

During the first three years of the lease term Stephens failed to make several rental payments on time. In each instance the state first sent him a notice of default by certified mail indicating that Stephens had 30 days in which to remedy his default. If payment had not been received within the 30 days, the state would send him a supplemental letter indicating that he had 15 or 20 additional days within which to pay the rent or suffer cancellation of the lease.

Stephens failed to make his rental payment due May 2, 1964, for the May 2 to August 2 quarter. On May 5, 1964, the state sent Stephens a notice of default by certified mail. The notice stated that Stephens had until June 5, 1964, to make payment. Stephens did not receive this notice. The state contends that it sent Stephens another letter on May 20, 1964, warning him that if the rental payment was not received within 15 days, the state would cancel the lease. Stephens denied receiving that notice also. On June 19, 1964, the state sent Stephens notice that the lease had been cancelled. Thereafter, Stephens made two separate tenders of payment to the state. Both tenders were refused.

Stephens filed suit against the state seeking relief from the state's attempted forfeiture of the lease. The state filed a motion for summary judgment, arguing that the undisputed facts showed that the Division of Lands had complied with the terms of the lease by sending the notice of default on May 5, 1964, by certified mail.[1] Under the terms of the lease and pursuant to that notice, the state contended it was legally entitled to cancel the lease when payment had not been received within the 30-day grace period. Stephens filed a cross-motion for summary judgment but sometime later filed a Statement of Genuine Issues. The facts contended by Stephens to be in issue were as follows:

1. Whether or not the notice of default dated May 5, 1964, was mailed to Stephens by certified mail.

2. Whether or not the State waived its right to rely on notices of default such as the one purportedly mailed May 5, 1964, by reason of prior leniency in failing to rely on such form notices of default before May 5, 1964.

3. Whether or not the supplemental notice of May 20, 1964, was mailed to Stephens.

4. Whether or not the supplemental notice of May 20, 1964, was mailed by certified mail to Stephens.

[1]. With respect to the rights of the state upon default, paragraph 16 of the lease provided:

> If the Lessee should default in the performance of any of the terms, covenants or stipulations herein contained . . . and said default shall not be remedied within 30 days after written notice of such default has been served upon the Lessee by the Lessor, the Lessee shall be subjected to such legal action as the Lessor shall deem appro-

priate, including but not limited to, the forfeiture of this lease . . . .

In regard to the giving of notices, the lease also provided in paragraph 17:

> Any notice or demand which must be given or made by the parties hereto shall be in writing, and shall be complete by sending such notice or demand by United States registered or certified mail to the address shown on the lease . . . .

The superior court denied the motions for summary judgment, finding that Stephens' denial of receipt of the May 5, 1964, notice of default raised a genuine issue as to a material fact; more particularly, whether the notice had actually been mailed. As to the purported issue of whether the supplemental notice of May 20, 1964, was mailed, the court found:

> The fact that earlier rental payments had been tendered and accepted late does not, in my opinion, raise an issue in this case. Under the lease, the State had the right to demand timely payment of rentals. Under paragraph 16 of the lease, a default, following written notice when not remedied within thirty days after such notice, the lease became subject 'to such legal action as the lessor shall deem appropriate, including but not limited to, the forfeiture of this lease.'[2]

A trial was had on the issue of whether the May 5, 1964, notice had been mailed and whether it had been mailed by certified mail.[3] The court found that the state had shown that it was the custom and practice of the Division of Lands to send notices of default by certified mail three to five days after the due date, and that this was a sufficient showing to establish that the May 5 notice had been mailed to Stephens by certified mail.[4] Having made this find-

ing, the court concluded that the lease was cancelled and that Stephens had "no right, title or interest in such property."

Stephens has appealed only from that portion of the court's denial of summary judgment finding that there was no issue of fact as to the mailing of the May 20, 1964, supplemental notice. Stephens argues that because of the state's previous conduct in sending out two notices before cancelling the lease, the state had waived its right to rely only on the first notice and to terminate Stephens' lease without sending both notices. Thus, Stephens concludes that the issue of whether the May 20, 1964, supplemental notice was mailed was material to a determination of the state's right to terminate the lease.[5]

We would be inclined to agree with Stephens that the May 20, 1964, notice was a prerequisite to the state's right to cancel the lease were it not for the non-waiver provisions of the lease contained in paragraph 20.[6] For it is well settled that where a landlord, through past dealings with his tenant, has led the tenant to believe that strict performance as to the time of payment of rent will not be required, the landlord cannot thereafter forfeit the lease for a default in timely payment of rent without first giving his tenant notice that he will thereafter demand strict compliance with the terms of the lease.[7] How-

---

2. The trial court was apparently also relying on the non-waiver clause found in paragraph 20 of the lease, which provided:

   The receipt of rent by Lessor, with or without knowledge of any breach of the lease by the Lessee or of any default on the part of the Lessee in observance or performance of any of the conditions or covenants of this lease, shall not be deemed to be a waiver of any provision of this lease. No failure on the part of the Lessor to enforce any covenant or provision herein contained, nor any waiver of any right hereunder by the Lessor, unless in writing, shall discharge or invalidate such terms or covenants or affect the right of the Lessor to enforce the same in the event of any subsequent breach or default.

   This ruling was made by Superior Court Judge Eben H. Lewis.

3. This trial was held before Superior Court Judge Edmond W. Burke.

4. Since no appeal has been taken from this finding, we do not reach the issue of whether there was adequate evidence to show a mailing of the May 5 notice.

5. Stephens is correct in contending that his denial of receipt of the May 20, 1964, notice raised an issue of fact as to whether the notice had been sent. Hartsfield v. Carolina Cas. Ins. Co., 411 P.2d 396, 399–400 (Alaska 1966); however, the issue is material only if the state was required to send the notice prior to cancelling the lease.

6. Quoted in note 2, *supra*.

7. *See* Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424 (1950); Duncan v. Malcomb, 234 Ark. 146, 351 S.W.2d 419

ever, where a lease contains a non-waiver provision such as the one contained in the subject lease, courts have given full effect to those provisions and have held that previous failures on the landlord's part to cancel for a breach of a covenant do not constitute a waiver of such a provision.[8] Thus, given the existence of a non-waiver provision, the landlord may demand strict compliance with a lease provision concerning time of payment without giving prior notice of such demand.[9]

■■ We hold that because of the non-waiver provision of the lease, the state did not waive its right to rely solely on the May 5, 1964, notice before cancelling the lease.[10] Therefore, the superior court was correct in determining that the issue as to the mailing of the supplemental notice was not material.[11]

Affirmed.

(1961); Powell v. Cannon, 119 Cal.App. 2d 748, 260 P.2d 202 (1953); Beck v. Trovato, 260 Iowa 693, 150 N.W.2d 657 (1967); Milbourn v. Aska, 81 Ohio App. 79, 77 N.E.2d 619 (1946); Bertrand v. Pate, 284 S.W.2d 802 (Tex.Civ.App.1955). These cases are in line with analogous contract doctrine. 6 S. Williston, Law of Contracts § 856, at 231 (3d ed. 1962); 3A A. Corbin, Law of Contracts § 764, at 532–33 (1960); Restatement of Contracts § 311 (1932).

8. Robinson v. Hadley, 351 F.2d 385 (9th Cir. 1965); Williams v. Behrend, 55 A.2d 138 (D.C.Mun.App.1947); Streeter v. Middlemas, 240 Md. 169, 213 A.2d 471 (1965). For cases involving non-waiver provisions in contracts, see Lundberg v. Switzer, 146 Wash. 416, 263 P. 178 (1928); Brown v. Chowchilla Land Co., 59 Cal.App. 164, 210 P. 424, 427 (1922).

9. In this regard we find the court's reasoning in Lundberg v. Switzer, 146 Wash. 416, 263 P. 178, 179 (1928), persuasive:

[T]he parties had a right to place in the contract any terms or conditions which were not unlawful or against public policy. In providing in the contract that acceptance of the delayed payments should not operate as a waiver of future payments, it cannot be said that the parties did anything which contravened any rule of law or went coun-

ter to public policy. Where the vendor has waived strict performance by accepting delayed payments, he may by due notice to the purchaser reinstate strict performance . . . as to subsequent payments after having waived that performance by accepting delayed payments, it would seem to follow that the parties to the contract in the first instance, if they saw fit to do so, could agree that the acceptance of delayed payments should not operate to waive strict performance as to any future payments. (Citations omitted)

10. Because we have disposed of this issue solely by reviewing the lease provisions, we need not decide the issue raised by the state as to the effect of the regulations governing the lease of state lands. In this regard, the state contended that the requirements of notice and non-waiver provisions of the regulations cannot be altered by conduct of a state employee.

11. Further, Stephens has suggested that we keep in mind the equitable principle that "equity abhors a forfeiture." We have not been unmindful of that maxim; however, the record in this case discloses no equities in favor of Stephens that would dictate application of that maxim. More particularly, the record fails to indicate that any improvements had been placed on the land by Stephens.