MARY L. ROBINSON ET AL *v.* ISIAH CLINE

73-70                                     501 S.W. 2d 244

Opinion delivered November 26, 1973

*Dickey, Dickey & Drake, Ltd.,* for appellants.

*Reinberger, Eilbott, Smith & Staten,* for appellee.

LYLE BROWN, Justice. Appellants, ten in number, are the sole heirs of Wm. Middleton, who died intestate. Appellants sought to cancel a rental and option to purchase agreement executed between Wm. Middleton and appellee, Isiah Cline. The trial court denied appellants relief and ordered them to carry out the option to purchase agreement as requested by appellee in his cross-complaint. It was appellants' contention that appellee was in arrears on his rental payments which they say resulted in a forfeiture of the agreement. On that critical point the trial court held the testimony to be completely opposite, which we take to mean evenly balanced; but the court held that any default in late payments had been waived by appellants.

The contract was executed between Middleton and Cline on April 15, 1966. By its terms Middleton rented to appellee, Cline, forty acres of land for a period of five years. The contract provided for a rental of $25.00 per month, beginning May 1, 1966, "and each month thereafter". During the five year period, appellee had the option of purchasing the property for $11,886.81. It was provided that if all rental payments were made and the option taken, Middleton would convey good title to appellee. There was no provision for forfeiture; nor was there a "time is of the essence" clause in the contract.

The principal witness for appellants was Mary L. Robinson, a daughter of the deceased Wm. J. Middle-

ton. She was an administratrix of the estate and was responsible for rent collections from appellee. She said monthly payments were made to her and she executed receipts. According to her records, appellee failed to timely make payments in July, October, and November, 1968; in March, August, and October of 1969; and in February and May of 1970. However, she conceded that during those years her records showed that appellee made three "double payments". According to her, that left six monthly payments not made. On cross-examination she was presented with a cancelled check for $25.00 for which she had no record of receiving. Taking that check into consideration, that left, according to her testimony, five unpaid monthly payments.

As to appellee's attempt to exercise the option to purchase, Mrs. Robinson testified in substance: Appellee informed her in late 1970 or early 1971 that he desired to exercise the option; she did not tell him some monthly payments were in default; she said the heirs were opposed to the option to purchase because, in their opinion, their father had been overreached in executing the agreement. She conceded she continued to accept rental payments until 1971. Then she stopped cashing the checks, accumulating ten checks which she retained but did not cash.

Appellee testified he talked with Mrs. Robinson about exercising his option; that she put him off; that thereafter and on April 26, 1971, he had his attorney write a letter notifying Mrs. Robinson that he was ready and able to exercise the option; that as of that date he was current with his monthly payments; that he was unable, however, to find cancelled checks for July and October 1968; and that he recalled making some payments in cash and believed it was in 1968. He said after he verbally told Mrs. Robinson of his intent to exercise the option, he continued to make his rental payments until he wrote the letter in April 1971.

Appellee's wife testified she acted as bookkeeper for the family; that she normally made the payments by check or by cash. She insisted they were current in their

payments and that Mrs. Robinson never claimed they were behind until making the allegation in the lawsuit. She said she was unable to find some of the cancelled checks, that they could in fact have been lost.

Appellants' first contention for reversal is that the trial court erred in not finding that appellee was delinquent in some of his monthly payments. The court found that "the testimony is diametrical on both sides as to whether there was an arrearage in the rentals to be paid". An examination of the testimony hereinbefore abstracted leaves us in a position of being unable to say that the chancellor's conclusion was in error. Appellants strenuously argue that the failure of appellee to produce checks or receipts for all payments conclusively sustains this point. On the other side of the coin, appellee and his wife insisted that they were current in their payments; that they sometimes paid in cash; and that some of their papers, accumulated over the period of some five years, could have been lost. It may have also been significant to the chancellor that appellants never claimed delinquency until the lawsuit was filed. Additionally, if appellee was delinquent, that fact would not of itself cause a forfeiture.

The second point for reversal is that the court was wrong in holding that appellants waived a right to forfeiture by accepting late payments and by failing to notify defendant of the breach. In connection with this point, there are four facts of significance which must be kept in mind. One, appellants accepted late payments in three different years and without protest. Two, appellants never notified appellee of any delinquency and intent to cancel. Third, there was no provision in the lease for forfeiture for failure to make payments on time. Fourth, there was no "time is of the essence" provision in the lease. In view of those facts and in light of our pronouncements in two cases, we think the trial court was correct. One of those cases is *Duncan* v. *Malcomb*, 234 Ark. 146, 351 S.W. 2d 419 (1961). The lease in that case was for ten years with an option to renew for another ten years. The lease provided for forfeiture by appellee upon failure to pay the rent when

due. Appellee made late payments of rent for the first two years and in the third year appellant demanded possession at a time when the rent was two months in arrears. No demand was made for the delinquent rent. The trial court held that appellant, lessor, had waived the requirement for prompt rental payments. We held that in the circumstances (receiving late payments without protest), appellant could not declare a forfeiture without first giving reasonable notice of intent to cancel. Undoubtedly the notice required would be for the purpose of giving the lessee the opportunity of bringing his payments up to date and to be aware that in the future, no delinquent payments would be accepted. Quoting from *Duncan,* we also said: "Of course it is elementary that equity abhors forfeitures".

The other case in point is that of *Pierce* v. *Kennedy,* 205 Ark. 419, 168 S.W. 2d 1115 (1943). Pierce rented lands to Kennedy for five years, the rent being $25.00 per month payable in advance. The lease contained an option whereby Kennedy could purchase the lands at any time within the five year period. The lease provided for termination of the option to purchase if there was any default in the payment of the rentals. Rents had been accepted which were not paid when due. This court refused to declare a forfeiture and quoting from a prior case said: "Where there has been a breach of a contract sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it, equity will relieve the defaulting party from a forfeiture unless the violation of the contract was the result of gross negligence, or was willful or persistent". In the case at bar we find no evidence that any delay in payment was caused by gross negligence, nor was there evidence of a willful and persistent course of conduct. The *Pierce* case quotes with approval from 32 Am. Jur., § 894, Landlord and Tenant: "A court of equity, even in the absence of special circumstances of fraud, accident, or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee".

Finally, it is argued that a guardian should have been appointed for Wm. Middleton, Jr., a minor, one of the appellants (plaintiffs below). Appellants argue that no judgment on appellee's cross-complaint should be entered because the minor came into the case by his mother as next friend. We have a statute, Ark. Stat. Ann. § 27-825 (Repl. 1962), which requires the defense of an infant to be made by a guardian. From best we can tell by the record, the objection to the absence of a guardian was advanced in apt time. That fact distinguishes this case from *Cannon* v. *Price*, 202 Ark. 464, 150 S.W. 2d 755 (1941), which at first blush may seem to be out of harmony with our holding in the case at bar.

We hold that the case should be affirmed with respect to all parties except as to the minor; as to the latter, the cause is reversed.

Affirmed in part; reversed in part.

HARRIS, C. J., not participating.