Howard W. Brill, Chief Justice, dissenting. When you are old and gray and full of sleep, And nodding by the fire, take down this book, And slowly read, and dream of the soft look, Your eyes had once, and of their shadows deep ... William Butler Yeats, “When You Are Old,” lines 1-⅛. I write a separate dissent to express other reasons why Arkansas Code Annotated section 24-8-710 (Repl.2014) is invalid. Quoting from Duncan v. Malcomb, 234 Ark. 146, 148, 351 S.W.2d 419, 420 (1961), this court stated, “Of course, it is elementary that equity abhors forfeitures.” This well-established maxim, although first developed in the area of creditors and mortgages, more broadly expresses fundamental principles of fairness that are applicable in the instant case. 12r,Judge Landers graduated from law school and was admitted to the practice of law in 1971. He was elected as a circuit judge for the Thirteenth Circuit in 2004 and assumed the bench in January 2005. He was reelected to the bench in 2010. In March 2016, the voters of Calhoun, Cleveland, Columbia, Dallas, Ouachita, and Union Counties elected Judge Landers to another six-year term as circuit judge. The Arkansas Judicial Retirement System and its board of trustees state that Judge Lan-ders has on January 2, 2017 a simple choice: assume the bench and forfeit his pension or leave the bench and keep his full pension. However, such an option is not a simple choice; it is a false choice. It is the classic Hobson’s choice. .In other words, it is not a real choice. The statute mandating the forfeiture of judicial-retirement benefits, found at Arkansas Code Annotated section 24-8-710, provides as follows: (a) Any member who has a minimum of twenty (20) years of actual service may retire regardless of age, and any judge or justice who has served at least eight (8) years shall be eligible for benefits upon reaching age sixty-five (65). (b) (1) Any judge. or justice who becomes seventy (70) years of age during a term of office to which he or she has been elected may complete the term without forfeiting his or her rights to retirement benefits under this section. (2) (A) Any judge or justice who is not eligible to retire at age seventy (70) may continue to serve -as judge or justice until the completion of the term of office in which he or she has sufficient service to retire without losing his or her retirement benefits. (B) The judge or justice shall lose all retirement benefits if he or she serves beyond the end of the term needed to get sufficient service to retire. (3) (A) Otherwise, judges or justices must retire by their seventieth birthday or lose their retirement benefits. | 2b(B) However, any active judge or justice who was serving prior to July 1, 1965, may continue to serve until any age and upon retirement shall be eligible to receive retirement benefits. Under this judicial-retirement statute, Judge Landers’s pension vested when he turned sixty-five years of age. That pension was based on his mandatory contributions and additional contributions from the state’s fiscal resources, if he had retired or left the bench, he would have received the pension that he had earned. In this case, the record indicates that never has a judge elected to forfeit the pension and continue on the bench. Instead, some have retired; some have gone back into the practice of law; some have become district judges. The reality of the judicial-retirement system reveals the flawed nature of the. false choice. The result is confiscatory. It harshly penalizes those judges who wish to exercise then-right to run for office again and to continue to serve. The majority suggests several reasons that the legislature might have considered in adopting this retirement penalty. It suggests that the legislature might have intended to open judicial positions to younger lawyers. However, the legislature did not set a general age limit of sixty or sixty-five or seventy or seventy-five to serve. The majority suggests that the legislature might have intended to keep “senile” judges, those over seventy, off the bench. But the legislature did not adopt a competency test. Finally, the majority suggests that the legislature might be troubled by the continued physical ability of judges to serve. But the legislature did not adopt a physical test, similar to those for firefighters, police officers, and military personnel. | a7Most significantly, methods are in place to deal with judges who are mentally or physically unable to carry on their duties. In 1988, the people adopted Amendment 66, which created the independent Judicial Discipline and Disability Commission. The Commission may investigate whether a judge has a mental or physical disability that prevents the proper performance of judicial duties. Under the Constitution and the implementing statutes, Arkansas Code Annotated 16-1CM01 to -411 (Repl.2010), the Commission may recommend to this court that a judge “be retired.” In addition, with the goal of assisting lawyers and judges at an earlier stage, in 2000 the Arkansas Supreme Court created the Arkansas Lawyer Assistance Program (ALAP), now known as Judges and Lawyer Assistance Program (JLAP). See In Re: Establishment of the Arkansas Lawyer Assistance Program, 343 Ark. App’x 780 (2000). (per curiam). With assured confidentiality, it provides immediate and continuing help to judges who suffer from physical or mental disabilities that result from disease, age, or other factors that impair their ability to serve. In reality, these statutory provisions serve to punish judges who wish to continue on the bench. Thus, for the foregoing reasons, I would hold that Arkansas Code Annotated section 24-8-710 is an impermissible forfeiture and an unconstitutional requirement for judges. I would urge the legislature to find a more appropriate way, within the constitutional guidelines, to assure a judiciary with the requisite qualifications. As for Judge Landers, when he is old and gray and full of sleep, and nodding by the fire, he can take down the decision of this court, and slowly read how he was forced to leave the bench and how the wishes of the citizens of six Arkansas counties were ignored. Danielson, J., joins.