[Civ. No. 19611.   Second Dist., Div. One.   Aug. 17, 1953.]

A. L. POWELL, Respondent, v. FRANK G. CANNON et al., Appellants.

Roger J. Pryor for Appellants.

Bishop Moore for Respondent.

WHITE, P. J.—Plaintiff-respondent was the lessee under a lease and extension thereof in which defendants-appellants were lessors. The original lease was for a term of three years commencing August 5, 1949, and therefore expiring in August of 1952. On September 10, 1951, the parties entered into an extension agreement, reciting that "by mutual agreement of all parties concerned, the above mentioned lease is extended until August 4, 1956, provided all conditions of the original lease are met," and containing other provisions not material to the determination of this cause. On April 18, 1952, the lessors gave written notice that they had decided to "turn over" the property to a Mr. Warren. The notice further stated: "Due to the fact that you have defaulted on your lease, by nonpayment of rent, we hereby give you notice to

make other arrangements on or before August 4, 1952, at which time we will turn the building over to Mr. Warren.'' Plaintiff thereupon brought an action for declaratory relief and injunction. After trial before the court without a jury it was adjudged ''That the written extension of lease made by plaintiff and defendants dated September 10, 1951, at all times since the making and execution thereof has been and is now valid and in force and binding upon plaintiff and defendants and extended and does extend said original lease according to the terms of the said written extension of lease.'' Defendants appeal from the judgment. The attempted appeal from the denial of a new trial must be dismissed, as no appeal lies from such order.

The trial court found that the plaintiff had under the original lease usually made the rental payments due on the 5th of each month anywhere from 10 days to two weeks later than the date specified in the lease but that the late payments were received by defendants without objection until the giving of the notice on April 18, 1952. When the notice was given, plaintiff was in default for the months of January and April, 1952. After receipt of the notice on April 19, 1952, plaintiff, on the following Monday, April 21, paid to defendants the overdue rentals, which were received by defendants without objection or reservation. The trial court further found ''That the delay in payment of the said rent was consented to by defendants and plaintiff was not in default at any time in payment of rent or under any of the terms of the said lease.''

The findings of the trial court are amply supported by the evidence, and no contention to the contrary is made in appellants' brief. Appellants concede that there was a waiver of the right to declare a forfeiture of the original lease for breach of the covenant to pay rent. Appellants urge, however, that ''the real issue in this case is whether performance of the covenant to pay rent was a condition precedent to renewal of the lease. The court made no finding on this material issue, and as a matter of law the defendants contend that they had such a right. There was no waiver of the right to refuse renewal of the lease, for breach of covenant to pay rent, contained in the separate agreement of September 10, 1951.''

Appellants refer to authorities which stand for the proposition that the right to declare a forfeiture of a lease and the right to refuse renewal thereof are separate and distinct

rights; that, as said in 51 Corpus Juris Secundum 608, "Performance of the other covenants of the lease may be expressly made a condition to their right to enforce a covenant for renewal against the lessor, and in such case a performance which may serve to prevent a forfeiture of the lease is not the measure of performance required by a provision which makes faithful and legal performance the condition of an extension of a lease." The rule invoked by appellants has no application to the circumstances presented in the instant case. It is not questioned but that the lessors acquiesced in the payment of rent from one to two weeks late during the term of the original lease. When the extension agreement was entered into on September 10, 1951, the lessee was five days in arrears on the rent due September 5, 1951; thereafter the lessors accepted rent payments which were usually about 10 days late until they gave notice on April 18, 1952. The lessors did not refuse a renewal upon the ground of nonperformance by the lessee, but on the contrary executed a contract of renewal and continued to accept late payments until April, 1952.

The record contains testimony, evidently believed by the trial court, that the defendant lessor Mr. Cannon, when asked by the lessee in January, 1952, if he "could skip a month and pick it up later," stated, "We had always paid our rent, and that he was not worried at all, and he thought that would be all right." Upon receipt of the notice of April 18, 1952, the lessee promptly cured any default by the payment of the rent for January and April. Although defendant lessor Mr. Cannon denied making the statement above quoted, he admitted that he had "allowed" late payments of rent "on many occasions," and "in fact after the first year he was in there he kept getting farther behind all the time."

██ The lease in question did not provide that time was of the essence, but assuming that it was, nevertheless, appellants could not, in the circumstances presented, declare a forfeiture or termination without giving the lessee an opportunity to cure the default in payment of rent. ██ "Where time is made of the essence of the contract for payment of money and this covenant has been waived by the acceptance of money after the same is due with knowledge of the facts, such conduct will be regarded as creating such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of intention to enforce

it." (*Chin Ott Wong* v. *Title Ins. & Trust Co.,* 89 Cal.App.2d 183, 188 [200 P.2d 541], and cases cited.)

Appellants, in relying upon the distinction between the right to declare a forfeiture and the right to refuse a renewal, lose sight of the fact that they, as lessors, did not refuse a renewal, but entered into an agreement for renewal a year before the expiration of the term of the original lease, and at a time when the lessee was five days in arrears in the rent, and that thereafter they continued to accept without objection the late payments of rent, and further, permitted the lessee to defer the payment of the January, 1952, rent until the lessors gave notice in April of 1952. It is to be understood that the lessors are not being penalized for accepting payments of rent which were justly due them. But by their conduct they waived their right to enforce a forfeiture of the lease until they had given notice to the lessee of their intention in the future to insist upon strict performance. Assuming the sufficiency of the ambiguous notice of April 18, 1952, the most it could accomplish would be to place the lessee upon notice that henceforward he would be held to strict performance of his covenant to pay rent at the times specified in the lease, under penalty of termination of the lease. (See *Chin Ott Wong* v. *Title Ins. & Trust Co., supra,* p. 188, and cases cited, particularly *Boone* v. *Templeman,* 158 Cal. 290, 297 [110 P. 947, 139 Am.St.Rep. 126]; and *American-Hawaiian Eng. & Const. Co.* v. *Butler,* 165 Cal. 497, 519 [133 P. 280, Ann.Cas. 1916C 44].) In response to the notice, the lessee paid the overdue rent, which was accepted, thereby curing the existing default, and thereafter there was no default in the payment of rent.

The judgment is affirmed. The attempted appeal from the order denying a new trial is dismissed.

Doran, J., and Scott (Robert H.), J. pro tem., concurred.