**TEXACO, INC.**

v.

**Junior PIGOTT et al.**
**Civ. A. No. 1759.**

United States District Court
S. D. Mississippi,
Hattiesburg Division.

Sept. 30, 1964.

Bernard Callender, of Hall, Callender & Dantin, Columbia, Miss., for plaintiff.

Garner W. Green, of Green, Green & Cheney, Jackson, Miss., Breed O. Mounger, Tylertown, Miss., Lemuel O. Smith, Jr., Forrest B. Jackson, Jackson, Miss., for defendants.

MIZE, District Judge.

This intricate action grows out of an interpleader suit filed pursuant to 28 U.S.C.A. § 1335 presenting the question of who is entitled to an overriding royalty of ⅛ of ⅝ paid into the Court by Texaco Inc.

The parties are Mary Crawford Swearingen Enochs, Martha Anne Enochs Williams, Mary Crawford Enochs Horne, J. L. Enochs, Sr., Sarah H. Enochs, Harriet L. Enochs, J. L. Enochs, Jr., George H. Enochs, Edgar L. Enochs, Katye E. Leggett, Jean L. Enochs, Iddo Lampton Enochs, Mary Jane Enochs Howell, P. H. Enochs, Jr., Edgar Earle Enochs, Isabelle Thompson Flowers, Margaret Flowers Smith, Edwina Flowers Vauclain, Edith Hill Enochs Hamilton, Ann Enochs Godwin, Dorothy Enochs Hardy, Edith Enochs Jones, Emma Enochs Stockett, Lucy Enochs Robinson, Lucy Robinson Hovious, Ida Mitchell Robinson Wickham, John W. Robinson, Jr., Fielding B. Robinson, Margaret Catching Robinson, Frances Wortman Mann, Lamar Enochs Ramsay, Mildred Ramsay Kind, and Wesley Merel Mann, Jr., hereinafter referred to as the "Fernwood Claimants" and Junior Pigott, Viola Pigott and W. H. Watkins, hereinafter referred to as the "Walthall Claimants."

The case is here on a Motion for Summary Judgment on behalf of the Fernwood Claimants and on a Cross Motion for Summary Judgment on behalf of the Walthall Claimants. Both claimants allege in their respective motions that there is no issue of fact.

On November 30, 1927, the Fernwood Lumber Company executed a standard oil and gas lease covering the SE¼ of SE¼ S8, T2n, R12E, Walthall County, Mississippi and other lands to P. H. Enochs, Trustee, who executed a declaration of trust in favor of the Fernwood Claimants. The basic lease made no provisions as to either shut-in gas or pooling. Thereunder the Company reserved the standard royalty of ⅛ of the gas (gas alone is being produced).[1] At the time of this oil and gas lease, the Fernwood Lumber Company was the owner in fee. The Company was a Mississippi Corporation and the stock therein was divided among the I. C. Enochs family—Enochs and Flowers, Limited, who held 57.21%, originally owned by I. C. Enochs; the J. L. Enochs family (he originally owned 17.54%); and P. H. Enochs family, who owned 25.25% so that 100% of the stock was held in the Enochs families.

On November 30, 1939, Fernwood Lumber Company by P. H. Enochs, Vice

1. Oil and Gas Lease from Company to Enochs, Trustee:
"In consideration of the premises the said lessee covenants and agrees: * * * 2nd: To pay the lessor the equal ⅛ part of all gas sold from each well where gas only is found, while the same is being used off the premises and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principle dwelling house on said land during the same time by making its own connections with the well at its own risk and expense * * *."

President, executed and delivered to Collie Pigott, a warranty deed conveying the SE¼ of SE¼ of S8, T2N, R12W, Walthall County, Mississippi.[2]

On January 25, 1946, Collie Pigott and wife, Onida Pigott conveyed to their son, Junior Pigott, by a warranty deed the same land Fernwood Lumber Company some six years earlier had conveyed to Collie Pigott.[3]

On July 4, 1960, Junior Pigott and wife, Viola Pigott conveyed to W. H. Watkins an undivided ⅟₁₆ of ⅛ overriding royalty interest.

The oil and gas lease Fernwood Lumber Company executed to P. H. Enochs, Trustee, in 1927 had a primary term of 25 years.[4] On its expiration date of November 30th, 1952, if no producing well had been obtained, the lessee, under the provisions could perpetually keep said lease in force by paying the lessor, or its heirs or assigns a certain sum.[5]

Prior to the expiration date, the delay rentals were paid in order that the lease would be continued in effect. Delay rentals have been paid in accordance with the provisions of the lease for every year from 1953 to 1961 when a well was actually produced.

In 1955, P. H. Enochs, Trustee, died. On July 12, 1955, there was executed an assignment and Third Supplemental Power of Attorney wherein Garner W. Green, Trustee, and the heirs at law and devisees of P. H. Enochs, Trustee, then deceased, constituted the Mechanics-State Bank of McComb the trustee.[6]

On April 30, 1957, the Mechanics-State Bank, Trustee, assigned and leased to Homer Lynn and others the rights under the 1927 Fernwood Lumber Company-P.

---

2. Land Deed from Company to Pigott:
"STATE OF MISSISSIPPI:
COUNTY OF WALTHALL:
"FOR AND IN CONSIDERATION of the sum of TWO HUNDRED FIFTY DOLLARS ($250.00), cash in hand paid, the receipt of which is hereby acknowledged, the FERNWOOD LUMBER COMPANY, herein acting by and through the VICE PRESIDENT thereof, doth hereby sell, convey and warrant unto— COLLIE PIGOTT—the following described tract or parcel of land, situated in Walthall County, Mississippi, . . .
Purchaser takes the property hereby conveyed subject to and charged with the Oil and Gas Lease thereon. Vendor assigns to purchaser all royalties which may arise from production from said property hereby conveyed * * *.'"

3. Land Deed from Collie Pigott to Junior Pigott:
"Warranty Deed, dated January 25, 1946, from Collie Pigott and wife Onida Pigott to Junior Pigott, conveying the said SE¼ of SE¼ of S8, which deed contains the following pertinent provision, to-wit:
"* * * this being the same land as per deed from Fernwood Lumber Co., to Collie Pigott as recorded in Book 43, at page 555, in the Chancery Clerk's office of Walthall County, Mississippi, wherein all Oil, Gas and other minerals have been reserved, but Vendor assigns to purchaser all royalties which may arise from production from said property hereby conveyed."

4. Pertinent portion of the Oil and Gas Lease:
"If no well be commenced on said land on or before the 30th day of November 1952, this lease shall terminate as to both parties * * *."

5. Pertinent portion of the Oil and Gas Lease:
"* * * * unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Magnolia Bank at Magnolia, Mississippi, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $2084.-92, being ten cents (10¢) per acre per annum rental, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like period of the same number of months successively * * *"

6. "2. Said Grantors do ratify, approve and declare valid the assignments made to the said party of the fourth part as naked Trustee under said declaration of trust by said Garner W. Green of the lease of date May 19, 1930, and by the heirs, devisees and executors of P. H. ENochs, deceased, of the lease of date November 30, 1927, hereby covenanting and agreeing that thereasto the said party of the fourth part shall have and possess the same rights as though initially therein

H. Enochs, Trustee, Lease, reserving ⅛ of ⅝ overriding royalties interest. Thereafter, this lease passed from Homer Lynn by mesne conveyances to Seaboard Oil Company. Seaboard approached Junior Pigott for a ratification and adoption, independently of the Fernwood Claimants and without their knowledge. On November 20, 1957, Junior Pigott and wife, Viola Pigott, executed a ratification to Seaboard.[7] Seaboard later assigned the rights to Texaco. Texaco has been since February 1962, producing gas from said land by virtue of a 320 gas unit established pursuant to an amendment to said lease providing for pooling.

The Fernwood Claimants first contend that when the Fernwood Lumber Company in 1927 conveyed the mineral lease to Enochs, Trustee, the Trust owned the lease under a general warranty being obligated to pay the Company only ⅛ of ⅝ royalty interest. While being a determinable fee, the lease was held in trust for specific cestuis qui trustents, the Fernwood Claimants. Under this trust the Trustee could not convey the lease and even if he had, the grantee, or assignee, would have taken in trust for the Fernwood Claimants. Second, when Collie Pigott purchased from Fernwood Lumber Company, that Company owned the land subject to the Trust lease on oil and gas. The lessee, Enochs, Trustee, had the right to work the same to exhaustion upon payment of the ⅛ royalty and if the gas was exhausted, there could be no reverter of gas to anyone. Thirdly, the trust, being in possession of and owning the entire gas under the tract, subject to an obligation of development and of paying ⅛ royalty, had a plenary right to assign the lease and did so assign to Texaco. In consideration of this assignment, Texaco agreed that ⅛ of ⅝ had never passed but had remained the property of the Trust, Fernwood Claimants further contend, as a fourth point, that Pigott's ratification vouchsafed to Texaco, lessee-assignee, all the gas subject to the obligation to pay Pigott, as assignee, the gas royalty specifically reserved. Finally, the Fernwood Claimants argue that gas production having been completed and the ⅛ royalty therefrom being paid to Pigott, there was nothing possessed by Fernwood Lumber Company which could pass to the Walthalls until the lease expired.

In opposition the Walthall Claimants argue first that the warranty deed from the lumber company to Collie Pigott was prepared by the grantor and should be construed most strongly against the grantor and its successors in interest, the Fernwood Claimants, who are in privy of estate with the grantor. Sec-

---

named in the said leases and shall have and possess thereover and thereasto in manner and form as therein declared the rights and properties lawfully evidenced, but subject to the same limitations as those imposed on Garner W. Green, Trustee, under and by virtue of the declaration of trust, executed by Garner W. Green, Trustee * * * and also to the declaration of trust executed by P. H. Enochs, et al., as at November 30, 1927 * * *."

7. Ratification dated November 20, 1957, executed by Junior Pigott and wife, Viola Pigott, to Seaboard Oil Company, wherein there will be found the following pertinent provisions, to wit:
"It is understood and agreed as a part of the consideration of the execution of this ratification that we do not in any manner waive any right or claim we may have to the above described lands as against the lessors in said lease, or any other person except the said lessee to the extent above stated, and that by the execution of this instrument we do not in any manner admit the validity of any right, title or interest of said lessors."
"It is further agreed that the rentals provided in said lease shall be paid to lessors under the terms, provisions and conditions thereof, and that no rental shall be paid to the undersigned, but that the execution of this instrument shall not in any manner waive any right which the undersigned may have to participate in the royalties therein provided to the full extent of any right, title or interest of the undersigned in said property, and this instrument shall not confer upon such lessors any right to such royalties not existing prior to the execution hereof * * *."

ondly they contend that the ⅛ of ⅝ overriding royalty reserved in the assignment and lease from the Fernwood Claimants to Homer Lynn is a royalty interest as conveyed in the deed to Collie Pigott. The Walthall Claimants contend in conclusion that the ⅛ of ⅝ overriding royalty interest claimed by the Fernwood Claimants is an interest subsequently acquired by them as successors in interest to their predecessor in title, Fernwood Lumber Company, who had conveyed by warranty deed all royalties produced from the land conveyed. Thus the Fernwood Claimants are estopped from asserting this subsequently acquired adverse title to that which had been conveyed by their predecessor of title.

The validity of each contention depends on the effect of the following language in the deed from the Fernwood Lumber Company to Collie Pigott:

> "Purchaser takes the property hereby conveyed *subject to and charged with* the Oil and Gas Lease thereon. Vendor assigns to Purchaser *all royalties* which may arise *from production from said property hereby conveyed."* (Emphasis added)

Although the Walthall Claimants' first contention is valid, it does not help their case.

■ While it is well settled that when a party in interest has drawn an instrument, such instrument must be construed most strongly against the drawer, it is likewise well settled that when the intention of the deed is plain and effect can be given to all the provisions, rules of construction cannot be involved.[8] It is doubtlessly the court's duty to construe an instrument as it is written.[9]

■ The words "subject to" mean "subservient to" or "limited by" as the Walthall Claimants contend. However, this is as far as the court can follow the

Walthall argument. An exception is always some part of the estate not granted at all. What does the sentence "Purchaser takes the property hereby conveyed *subject to* and *charged with* the Oil and Gas Lease thereon" mean? (emphasis added) Obviously, it means that the deed was subject not only to the estate granted by the lease but also to the exception retained by the lease.

■ "Subject to" as used in the deed referring to an earlier conveyance or lease means that title passed in the subsequent instrument was "subject to" to earlier lease. These words are words of qualification showing the grantor's intent not to grant an absolute title.[10]

■ The lease stated that the lessor, grantor here, had, as part of the consideration, bargained that the lessee would pay ⅛ of all the gas produced from said property. This ⅛ interest is a royalty interest, which is an interest in real property, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom.[11] When the oil and/or gas is produced such interest is delivered to the land owner free of any cost but the term "royalty" does not include perpetual interest therein.

It has been held in Sykes v. Austin,[12] that such a conveyance merely conveyed the ⅛ royalty, if and when, and as produced, since clearly no conveyance of oil or gas in place was attempted, nor were any mineral rights conveyed. Under the terms of the lease the company could convey only its ⅛ royalty interest.

■ The term "charged with" merely brought to the grantee's knowledge the existence of the lease and that if grantee took any minerals, he took subject to the conditions of the lease.

■ The second clause in this deed reads, "Vendor assigns to purchaser *all royalties* which may arise *from*

8. Cf. Soria v. Harrison County, (1909) 96 Miss. 109, 50 So. 443 and Berry v. Luckett, Miss.1963, 158 So.2d 706.

9. See e.g., Garraway v. Bryant, 1955, 224 Miss. 459, 80 So.2d 59, 61 A.L.R.2d 1387.

10. Percival v. Williams, 82 Vt. 531, 74 A. 321.

11. See, e.g., Palmer v. Crews, 1948, 203 Miss. 806, 35 So.2d 430, 4 A.L.R.2d 483.

12. 1938, 182 Okl. 299, 77 P.2d 719.

*production from said property hereby conveyed.''* (emphasis added) As the Walthall Claimants contend, the word "all" means "the whole", "the sum of all the parts", "the aggregrate." It is about the most comprehensive and all inclusive word in the English language.[13] There can be no doubt as to its literal meaning. As used in the instant case, "all" modifies "royalty". The Mississippi case of Palmers v. Crews[14] gives an adequate definition of the word "royalty." The question presented here is not who is entitled to a "royalty" but who is entitled to an "overriding royalty". There is a difference. "Royalty" generally means that fractional interest in the production of oil or gas which was created by the owner of the land either by reservation when the mineral lease was entered into or by direct grant to a third person.[15] An "overriding royalty" is a given percentage of the gross production payable to some person other than the lessor or persons claiming under him.[16] Such interest develops where an owner of the working interest (as Texaco is here) contracts to deliver a part of the gross production to another, usually his assignor (the Trustee here).

 The contentions of the Walthall Claimants must fall for it is clear that "all royalties" as used here cannot mean all overriding royalties also. The last part of the "all royalties" clause reads, "from production from said property hereby conveyed." Not even the Walthall

Claimants contend that the oil and gas rights leased to the Trust were conveyed in the deed to Collie Pigott. The case of Delta Drilling Co. v. Simmons, 1960, 161 Tex. 122, 338 S.W.2d 143, is inapplicable because the Texas Supreme Court there stated, "Where it was determined that the instrument before the Court created an overriding royalty, this Court has held that the overriding royalty was a royalty interest." Here the Court has not determined that the Fernwood Lumber Company deed to Collie Pigott created an overriding royalty or that an overriding royalty is the same as royalty. Thus the second Walthall contention falls.

 The Walthall Claimants' third point of after acquired property and estoppel falls for the reason the overriding royalty which the Trust reserved in its assignment to Lynn was not after acquired property. The lease from the lumber company to Enochs, Trustee, is still in effect by its own terms. Collie Pigott conveyed to his son, Junior Pigott, the land in 1946 and the Pigott deed stated, *"wherein all Oil, Gas and other minerals have been reserved"* (emphasis added) referring to the lumber company deed covering the land to Collie Pigott. Collie Pigott by the terms of his deed knew he only had a possibility of reverter in the minerals or at least that he only owned a ⅛ royalty. Moreover by the terms of the ratification Junior Pigott and wife gave to Seaboard the 1927 Oil and Gas Lease rights were reaffirmed.[17]

---

13. In Re Central of Ga. Ry. Co., D.C.La., 58 F.Supp. 807.

14. Supra.

15. Dabney-Johnston Oil Corp. v. Waldin, 4 Cal.2d 637, 52 P.2d 237.

16. See, e.g., 58 C.J.S. Mines and Minerals, § 213, p. 540.

17. Pertinent portions of Junior Pigott and wife-Seaboard Ratification:
"NOW, THEREFORE, in consideration of the premises and the sum of One Dollar ($1.00), cash in hand paid, and other good and valuable considerations, the receipt of all of which is hereby acknowledged, we, the undersigned, do hereby ratify, adopt, approve and confirm the said lease in all of its terms and provisions, and do hereby lease, demise and let the above described land and all land covered by said lease by general boundary description exclusively unto Seaboard Oil Company, Present hold of said lease subject to and in accordance with all of the terms and provisions of said lease, as fully and completely as if we had executed, acknowledged and delivered the same in our own proper person, and we do hereby agree and declare that said lease in all of its terms and provisions is binding on us. and *is a valid and subsisting oil, gas and mineral lease."* (emphasis added)
"It is understood and agreed as a part of the consideration of the execution of this ratification that we do not in any

From the plain terms of the ratification Junior Pigott and wife merely reserved all their rights against the Lessor of the lease. The lessor was the Fernwood Lumber Company. The lessees were the Fernwood Claimants and later they became the assignors and Seaboard the assignees and lessee of the original lease.

 When Fernwood Lumber Company, as lessor, executed the lease to P. H. Enochs, Trustee, and Enochs entered into possession, he was prohibited absolutely, as Trustee, from controverting the lumber company title. Thereafter when the company sold the land to Pigott subject to the lease, Enochs, Trustee, was in privity with Pigott.[18] When this land was conveyed to Junior Pigott, subject to the lease, the lessee thereby was in privity of estate with Pigott and the owners of the lease on the one side, and the land and royalty on the other continued. Junior Pigott and wife assumed to ratify and adopt the provisions of the 1927 Oil and Gas Lease, and by the plain words of the Pigott-Seaboard Ratification express reference to the 1927 Lease is made and ratification thereas to is recited. The effect of such ratification under the settled law is stated in Cummings v. Midstates Oil Corp., 193 Miss. 675, 9 So.2d 648, where the Court concluded that after such ratification the policy of the law prohibited a repudiation thereof.

 It is without question under the Fernwood Lumber Company's lease of the mineral rights to the Trust, the Trust owned the lease under a general warranty, obligated only to pay the company a $\frac{1}{8}$ royalty, with a right to work the lease to exhaustion under a determinable fee.[19] As a trustee, Enochs could not have conveyed this lease to the Walthall Claimants. If it had been conveyed to the Walthall Claimants, they would have taken as trustees for the cestuis qui trustents.[20] Even though P. H. Enochs was a Trustee for the Fernwood Claimants and the Vice President for the lumber company there is nothing inconsistent in what he conveyed to Collie Pigott and what was shown in the same deed to be the property of another. Furthermore, equity does not allow a trust to fail for want of a trustee. The Fernwood Lumber Company sold to Collie Pigott the land and assigned also the royalty which it has reserved in the Oil and Gas Lease. This conveyance constituted all the property vested in the lumber company and pursuant thereto Collie Pigott had only the right of reversion in the minerals subject to a paramount right in the Trustee to develop and produce. The first two contentions of the Fernwood Claimants are therefore found to be valid

 The third contention of the Fernwood Claimants, that of a plenary right to assign the lease, is also well taken. In the instant case the claimants went even further and ratified the assignment power in 1955.[21]

In discussing the third argument of the Walthall Claimants the Court fully discussed the last two contentions of the Fernwood Claimants.

After a careful consideration of the facts and the points of law urged by both sides and a full discussion the Court is of the opinion that the Motion for Summary Judgment must be sustained and judgment entered for the Fernwood Claimants, dismissing the Cross Motion for Summary Judgment on behalf of the Walthall Claimants.

An order may be entered accordingly.

manner waive any right or claim we may have to the above described lands as against the *lessors in said lease*, or any other person *except the said lessee* to the extent above stated, and that by the execution of this instrument we do not in any manner admit the validity of any right, title or interest of said lessors." (emphasis added)

18. See 24 Am.Jur. Gas & Oil, § 89, p. 594.

19. Frost v. Gulf Oil Corp., 238 Miss. 775, 119 So.2d 759.

20. Isom v. First National Bank, 52 Miss. 902.

21. See footnote 6, supra.