**KEYSTONE PROPERTIES, a limited Partnership, Petitioner,**

v.

**BATEY MOVING AND STORAGE COMPANY, INC., and W. N. Batey, Respondents.**

Supreme Court of Tennessee.

Jan. 21, 1974.

Rehearing Denied March 4, 1974.

William J. Harbison, Nashville, for petitioner.

Jack J. Green, Nashville, for respondents.

## OPINION

CHATTIN, Justice.

Respondent, Batey Moving & Storage Company, brought this suit on January 14, 1971, to oust its subtenant, Allied Consolidation Warehouse, from possession of a warehouse upon the ground Allied had subleased the same property to Service Systems of Tennessee without written permission of respondent as required by the terms of the sublease to Allied.

The warehouse was built as an investment by a partnership which did business under the name of Miller Kimbrough, Trustee. On July 15, 1969, Kimbrough leased the warehouse to Batey Moving & Storage Company for a term of ten years from September 1, 1969. W. N. Batey signed the lease as guarantor.

Thereafter, Kimbrough sold the warehouse to petitioner, Keystone Properties, and the Kimbrough lease to Batey was assigned to Keystone.

On September 8, 1969, Batey subleased the property to Allied for a period of two years from August 1, 1969. T. E. Breene, Jr., signed the lease as guarantor.

Thereafter, Allied subleased the warehouse to Service Systems.

On June 10, 1970, Service Systems subleased to Carrier Corporation for a term of one year from and after September 1, 1970.

On February 12, 1971, Keystone intervened seeking a termination of the original lease of Kimbrough to Batey which was assigned to Keystone on the ground Batey had violated the terms of the lease by subletting the property to Allied without the written consent of Keystone.

On April 22, 1971, W. N. Batey, individually and as sole owner of all the outstanding stock of Batey Moving & Storage, Inc., intervened insisting he was entitled to be substituted as lessee of the property in the event the lease to Batey Moving & Storage Company had been breached by the Company.

The Chancellor sustained the intervening petition of Keystone and terminated the lease of Kimbrough to Batey and decreed Keystone to be entitled to immediate possession of the property.

All of the subleases mentioned above expired prior to the hearing before the Chancellor and the right of the lessees thereunder became moot.

However, Carrier remained in possession under a renewal of its sublease.

Carrier prepaid rent to Batey for two months in August, 1972, in the amount of $6,240.00. The Chancellor, after a hearing, ordered Batey to pay this amount into court.

From the decree of the Chancellor, Batey perfected an appeal to the Court of Appeals.

The Court of Appeals held Keystone had waived the requirement of written consent to subleasing and in the alternative the terms of the lease did not entitle Keystone to a termination of the lease even if Batey had violated them.

The Court of Appeals further vacated the decree of the Chancellor requiring Carrier to pay into court certain rent due from Carrier.

The Court of Appeals reversed the decree of the Chancellor and remanded the case, directing the Chancellor to adjust and decree the monetary obligations of the parties in harmony with its opinion. We granted certiorari.

Keystone has assigned three assignments of error. The first assignment insists the Court of Appeals erred in holding Keystone had waived the requirement of the lease to Batey of written consent by Keystone, the lessor, for subletting the property by Batey.

In reversing the Chancellor, the Court of Appeals relied upon the testimony of C. T.

Scott, one of the partners doing business under the name of Miller Kimbrough, Trustee, and the testimony of J. M. Grissim, a partner in Keystone Properties.

Scott testified he received a letter from Batey dated June 28, 1969, in which Batey requested written consent from Keystone permitting Batey to sublease the property.

He stated he had no personal objection to subleasing; and that he did not recall ever discussing it with anyone. He further stated he and his associates had constructed the building to sell and did sell it.

He testified he, at some later date, learned Batey had sublet the property to Allied; but could not recall when he did learn about the sublease to Allied. He stated he could not say whether he learned about the sublease before or after the property was sold to Keystone.

Grissim testified his firm, Keystone, purchased the property as an investment. He stated the property was subject to two leases, the major portion of the building having been leased to Batey and another and separate part of the warehouse was under a lease to Falstaff, a beer company.

Grissim further testified he visited the property before buying it and saw nothing that suggested to him Batey had sublet the property to anyone; and that he saw a part of the warehouse was being used by the beer company.

He stated he did not learn the property had been sublet to Allied until the original bill was filed by Batey.

The Court of Appeals found from the testimony of Scott that Kimbrough, the original lessor, knew Batey had sublet the property to Allied; and, therefore, that knowledge must be imputed to Kimbrough's assignee, Keystone.

The Court of Appeals further found from the testimony of Grissim that he found a beer company was in possession of part of the warehouse and thereby had knowledge the property had been sublet.

The Court of Appeals then held:

"Therefore, in addition to the knowledge acquired by the visit of Keystone's partner, Mr. Crissim, to the premises, Keystone must be charged with the knowledge of Mr. Scott, the negotiating partner, Mr. Grissim, to the premises, Inc., had sublet the warehouse to Allied."

We must disagree with the Court of Appeals on this issue. The Chancellor saw and heard the witnesses and found the greater weight of the testimony supported Keystone's position; that is, they had no notice of the sublease until after the original suit was filed by Batey.

The Court of Appeals evidently misconstrued the testimony of Grissim by finding he found a beer company was occupying a part of the warehouse. The record shows the beer company was not occupying that part of the building leased by Batey and sublet to Allied by Batey. Hence, that fact is irrelevant.

The uncontradicted testimony of Grissim was he had no knowledge of the sublease to Allied until Batey filed the original bill in this case.

Scott's testimony cannot be construed to mean he knew of the sublease prior to the date he and his associates conveyed the property to Keystone.

There is no proof Scott nor any of his associates granted Batey's request that Batey be given written permission to sublet the property. The lease was not recorded nor did Batey notify Keystone of the lease.

The record shows the sublease to Allied was executed on September 8, 1969, over two months from and after the letter by Batey to Scott was written requesting written permission to sublet the property.

Futhermore, the record shows Batey, both individually and as owner of Batey

Moving & Storage Company, after a request to Keystone for permission to sublease to Carrier, which was denied by Keystone, did deliberately execute a sublease of the property to Carrier for a term of thirteen months commencing on August 1, 1971, and ending on the 31st day of August, 1972.

The case was tried before the Chancellor on May 20, 1972.

By Keystone's second assignment of error, it is insisted the Court of Appeals erred in holding there could be no forfeiture of the lease to Batey by a violation of the covenant against subletting.

The Court of Appeals held in light of the peculiar verbiage in the lease Keystone "did not have the right to declare a forfeiture of the remaining leasehold rights of Batey, Inc., on the grounds of subletting. The rights of Keystone are limited to the exclusion of any unacceptable sub-tenant from the premises."

The pertinent provisions of the lease from Kimbrough to Batey are as follows:

"Lessee shall not have the right, without the written consent of the lessor, to subrent or assign this lease - - - -.

    \*     \*     \*     \*     \*     \*

"It is further understood and agreed that each and all of the terms, covenants, undertakings and agreements contained herein shall be and are to be construed as to conditions, and upon the failure of the lessee - - - - or upon its breach of or failure to perform and comply with any of the covenants, undertakings or agreements contained in this lease, lessor reserves the right to, and may elect at any time to declare this lease forfeited and at an end, and to reenter and take possession of the premises, and - - - - - - it being expressly agreed that the failure on the part of the lessor to declare this lease forfeited shall not be considered as a waiver of his right to elect as to any subsequent breach, the right being a continuing one."

The law of this State is clear that a forfeiture may be declared and enforced by a lessor upon a showing of a violation of a provision against subletting without written consent. Murphy v. Reynolds, 31 Tenn.App. 94, 212 S.W.2d 686 (1942); Reed v. Estes, 113 Tenn. 200, 80 S.W. 1086 (1904).

Moreover, the Court of Appeals overlooked the fact Batey, individually and as sole owner of Batey Moving & Storage Company, took the position in the original bill that the violation of the same and identical language as to forefeiture contained in its sublease to Allied entitled Batey to declare and enforce a forfeiture. Batey is, therefore, in no legal position to assert Keystone could not take a forfeiture upon proving a violation by Batey.

It is settled law of this State "a party cannot be allowed to solemnly take a position in the course of litigation which he thinks is to his advantage, and, then, change that position to another and contrary one when he deems it to his advantage to do so." Bubis v. Blackman, 58 Tenn.App. 619, 435 S.W.2d 492 (1968).

It is, also, settled in this State that, "the interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts, but the declarations of the parties may be considered." Womble v. Walker, 181 Tenn. 246, 181 S.W.2d 5 (1944); State ex rel. v. Vanderbilt University, 129 Tenn. 279, 164 S.W. 1151 (1913).

The final assignment of error contends the Court of Appeals erred in vacating the Chancellor's decree requiring Batey to pay into court the sum of $6,240.00 which Batey received from Carrier for two months' rent under its sublease.

From the view we have taken of the case, this action of the Court of Appeals is obvious error.

The decree of the Court of Appeals is reversed and the decree of the Chancellor

is affirmed. The cause is remanded to the trial court for enforcement of the decree.

Respondents will pay the costs.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.

## ON PETITION TO REHEAR

CHATTIN, Justice.

Respondents have filed two petitions to rehear. One of the petitions was filed by Counsel for Batey Moving & Storage Company. The second petition was filed by W. N. Batey, pro se.

We will consider the Company's petition first. Counsel insists we were in error in reversing the Court of Appeals and reinstating a judgment of the Chancellor against respondents in the sum of $6,240.-00. We merely held from the view we had taken of the case, such action was error.

We then reversed the decree of the Court of Appeals and affirmed the decree of the Chancellor. There is no merit in respondents' contention.

The other contentions are we erred in holding Keystone had not waived the condition of the lease requiring written consent of the lessor for subletting; and that we failed to hold W. N. Batey as guarantor under the lease.

Both of these contentions were considered in our opinion. We gave our reasons for holding Keystone had not waived the condition of the lease pertaining to subletting. We, also, pointed out that Batey had signed the lease as guarantor and was the sole owner of all of the outstanding stock of Batey Moving & Storage Company.

The petition filed by W. N. Batey, pro se, insists his "opponent", evidently Mr. Grissim, was not placed under oath and did not testify truthfully in "at least two instances"; and that "he believed none of these proceedings should have taken place in Nashville, Tennessee, because one of the litigants was a practicing Attorney."

Such impertinent allegations have no merit in a petition for a rehearing.

Both petitions are denied. Respondents will pay the costs.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.