Joseph J. HENDRICKSON, Appellant,

v.

Charles FREERICKS, Phyllis Freericks, Sam Jeffcoat, and Andrew J. Hall, Appellees.

Phylene JEFFCOAT, Cross–Appellant,

v.

Joseph J. HENDRICKSON, Cross–Appellee.

Joseph J. HENDRICKSON, Appellant,

v.

Phylene JEFFCOAT, Appellee.

Nos. 4292, 4565 and 4605.

Supreme Court of Alaska.

Nov. 21, 1980.

Opinion on Rehearing March 27, 1981.

---

Joseph W. Sheehan, Fairbanks, for appellant/cross–appellee Hendrickson.

H. Bixler Whiting, Whiting & Rosie, Fairbanks, for appellees/appellants Freericks, Jeffcoat, & Hall, and cross–appellant Phylene Jeffcoat.

_____

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

OPINION

BURKE, Justice.

These consolidated appeals arise from a dispute concerning a lease agreement to certain real property located in Fairbanks, Alaska [hereinafter referred to as the Young property].

Andrew Hall and Stanley Young owned adjacent pieces of property in downtown Fairbanks. In the 1940's, the two men entered into a party wall agreement and constructed adjoining office buildings on their respective properties. During the course of construction, Young ran short of money and so they agreed that Hall would complete Young's building. In exchange, Hall received a ten-year lease to Young's property. Seven years later, in 1959, the two agreed to extend the lease for twenty years in exchange for Hall's construction of an addition to Young's building. This twenty-year lease [hereinafter referred to as the Hall–Young Lease], which commenced in February, 1960, and expired in February, 1980, is the subject of this litigation.

In October, 1969, Hall entered into a "Real Estate Management Agreement" [hereinafter referred to as Management Agreement] with Charles and Phyllis Freericks, which effectively assigned his interest in the Hall–Young Lease to them. This agreement was made in conjunction with Hall's sale of his building to the Freericks.

In February, 1975, Young sold his interest in the Young property to Joseph Hendrickson. On May 16, 1975, Hendrickson, through his attorney, wrote to Andrew Hall and Charles Freericks and declared the Hall–Young Lease terminated. Two reasons were given as grounds for termination. The first was that the Management Agreement violated paragraph 13 of the Hall–Young Lease which prohibited assignment

of the lease. The second reason given was that Freericks allowed the Young Building to be used as an entryway to a gambling operation in the Hall Building, and such illegal conduct was also in violation of the lease. Five days later, on May 21, 1975, Freericks sold the Hall Building and assigned his interest in the Management Agreement for the Young Building property to Phylene Jeffcoat.

On August 21, 1975, Hendrickson filed a trespass action against Freericks and Sam Jeffcoat[1] seeking a permanent restraining order from future trespass. On July 13, 1976, the superior court granted summary judgment in favor of Hendrickson, enjoining Sam Jeffcoat from interfering with Hendrickson's interest in the Young Building. The court also declared that Hendrickson was the owner of the property in question. Hendrickson subsequently took over the management and control of the property from Jeffcoat.

On August 31, 1976, Hall, Freericks, and Phylene Jeffcoat (lessees and assignees of the Young property) sued Hendrickson for wrongfully interfering with their leasehold interest. They claimed that both assignments were made with the consent and knowledge of Stanley Young and that Hendrickson took the property subject to those assignments. On September 27, 1976, Hendrickson amended his original complaint for trespass, which had been filed against Sam Jeffcoat and Charles Freericks, to include Phyllis Freericks and Andrew Hall.[2]

The trial on Hendrickson's amended complaint was held on August 4, 1978. The trial court ruled in favor of the lessees (Hall, Freericks, and Jeffcoat), finding that Hendrickson lacked standing to sue because the lease agreement was still under the control of Stanley Young and, in the alternative, that even if Hendrickson had standing, Young had waived compliance with the

no–assignment clause, thus preventing forfeiture of the lease. As Hendrickson had been in control of the leased property since August, 1976, to the time of trial two years later, the trial judge also held that this violated the Hall–Young Lease and awarded damages, plus costs and attorney's fees, totaling $51,346.85 to Phylene Jeffcoat, for the period the property had been lost to her. Attorneys fees and costs in the amount of $3,150.00 were awarded to the Freericks. Hendrickson appealed.

Since August 3, 1978, Phylene Jeffcoat has been in control of the disputed property. On March 5, 1979, Hendrickson filed a forcible entry and detainer action against Jeffcoat for her alleged failure to pay rent due on the Young property. Jeffcoat filed a motion to dismiss the action, alleging that Hendrickson lacked standing to sue for the rental payments in light of the earlier trial court decision. The motion to dismiss was granted on the grounds of *res judicata*. Again, Hendrickson appealed and Phylene Jeffcoat cross–appealed, claiming that the trial court improperly calculated her damages.

## I. HENRICKSON'S RIGHT TO SUE

The first question to be resolved is whether Joseph Hendrickson had standing to maintain a trespass action against lessees Hall, Freericks, and Jeffcoat. The trial court ruled that he did not. We disagree.

Resolution of this issue turns upon interpretation of language contained in the warranty deed conveying ownership of the Young Building and property to Hendrickson. After the description of the property being conveyed, the deed contained the following language:

*Subject to and excepting from* grantor's covenants: (1) reservations in U.S. Patent; (2) party wall agreement entered

---

1. Sam and Phylene Jeffcoat were divorced during the course of events relevant to this suit. Phylene Jeffcoat testified at trial that after she purchased the Hall Building and Management Agreement for the Young Building, she hired her ex–husband to manage both pieces of property.

2. Phylene Jeffcoat was never made a party to this action although she joined the other lessees in their suit against Hendrickson.

into between Stanley E. Young and Andrew J. Hall and Ann M. Hall recorded in Miscellaneous Records, Volume 14, Page 135; and (3) *lease entered into September 28, 1959 by Stanley E. Young as lessor and Andrew J. Hall, as lessee,* recorded in lease records, Volume 14, Page 176, expiring February 1, 1980. [Emphasis added.] The lessees argued and the trial court agreed that the "subject to and excepting from" language meant that the right to enforce the terms of the lease remained with Young, and was never transferred to Hendrickson. Therefore, despite the sale of the property to him, Hendrickson had no power to enforce the lease.

 The words "subject to" are frequently used in conveyances and have historically been interpreted as meaning "subordinate to," "subservient to," "limited by," or "charged with." *Renner v. Crisman,* 80 S.D. 532, 127 N.W.2d 717, 721 (1964).[3] When used in a deed these words are generally regarded as terms of qualification, not contract. They serve to put a purchaser on notice that he is receiving less than a fee simple. There is nothing in their use which connotes a reservation or retention of property rights. *Id.,* 127 N.W.2d at 721 (citation omitted).

Although there are a few cases interpreting this phrase as reserving an interest in the grantor, *i. e.,* not including that interest as part of the conveyance, these cases are exceptions to the general rule. They generally involve facts, in addition to the "subject to" clause, which indicate that the intention of the parties was to retain an interest in the property, or exclude it from the conveyance. For example, a number of cases interpreting these words as creating a reservation of rights in the grantor involve the reservation of an easement or subsoil rights to minerals. *Kelley v. Haas,* 262 S.W.2d 687 (Ky.1953); *Dagrosa v. Calabro,* 105 N.Y.S.2d 178 (N.Y.Sup.1951).

 The phrase "excepting from," on the other hand, has generally been interpreted to mean "reserving." As used in a deed, most courts have interpreted the terms "reserving" and "excepting" to mean that the grantor retains some estate or right in the subject of the grant. *Northwestern Public Service Co. v. Chicago & N. W. Railway Co.,* 84 S.D. 271, 170 N.W.2d 351, 354 (1969) (citation omitted).

 Despite these differences in case law definitions, however, the primary factor considered by the courts in determining how these phrases are to be interpreted in the individual situation is the intent of the parties. *Shilts v. Young,* 567 P.2d 769, 773 (Alaska 1977). In the instant case, it is evident that it was Young's intention to pass all rights to Hendrickson. In his affidavit, Young stated:

It was my intent on execution of said warranty deed that I was conveying all my right, title and interest to said real estate, including my interest as lessor under the terms of that certain lease designated at [sic] the Hall–Young lease dated September 28, 1958. Upon completion of the execution of said warranty deed of February 5, 1975, I claimed no further interest to the said premises nor the lease executed between myself and Mr. Hall dated September 28, 1959.

Since this statement of Young was against his interest it sheds considerable light on the intent of the parties. Therefore, we conclude that the words "subject to and excepting from" as gleaned from the expressed intent of the parties in this case should be interpreted not as a reservation of a right of control in Young, but merely as words of qualification to put Hendrickson on notice that he would be taking the Young property subject to the Hall–Young Lease.

 The trial court's decision on this issue also seems inconsistent with the statutory requirements for warranty deeds pre-

3. *See also Texaco, Inc. v. Pigott,* 235 F.Supp. 458, 463 (D.Miss.1964); *State v. Willburn,* 49 Haw. 651, 426 P.2d 626, 630 (1967); *Bulger v.* *McCourt,* 179 Neb. 316, 138 N.W.2d 18, 22 (1965); *Bradshaw v. Lower Colo. River Auth.,* 573 S.W.2d 880, 883 (Tex.Civ.App.1978).

scribed by AS 34.15.030(b).[4] In order to comply with the statute, it was necessary for Young to qualify his warranties. This was done through the "subject to and excepting from" language quoted previously.

Furthermore, it would appear to contravene sound public policy to say that Hendrickson lacked standing to enforce compliance with the lease terms, for such a holding would allow the lessees to wreak havoc on Hendrickson's newly purchased building without allowing him any recourse personally.

Finally it seems that Hendrickson was receiving the rent under the Hall–Young Lease. This also clearly established that Young reserved no leasehold rights when he conveyed the property to Hendrickson.

In light of all of the above factors, we are convinced that the trial court erred in finding that Hendrickson had no standing to sue to terminate the Hall–Young Lease.

## II. WAIVER AND ASSIGNMENT OF THE HALL–YOUNG LEASE

Since we have determined that Hendrickson did have standing to sue, we must now consider whether he is barred from enforcing the no–assignment clause of the lease because of the actions of the prior owner, Stanley Young. The trial court ruled that the Management Agreement was an assignment of the Hall–Young Lease and as such constituted a breach of the agreement.[5] However, the court went on to find that Young had waived strict compliance with the no–assignment clause by permitting Hall to assign the lease to the Freericks and that Hendrickson was bound by this prior waiver. Hendrickson appeals this ruling.

**4.** AS 34.15.030(b) provides as follows:
 A deed substantially in form set forth in (a) of this section when otherwise duly executed, is considered a conveyance in fee simple to the grantee, his heirs and assigns, with the following covenants by the grantor: (1) that at the time of the making and delivery of the deed he is lawfully seized of an indefeasible estate in fee simple to the premises described, and has the right and power to convey the premises; (2) that at the time of making and delivery of the deed the premises are free

### A. The Hall–Freericks Assignment

The clause prohibiting assignment is contained in paragraph 13 of the Hall–Young Lease. It reads in pertinent part:

13. That Lessee shall not assign this lease, or any interest therein, nor sublet said premises without the written consent of Lessor first had and obtained, (the provision as to subletting shall not apply to portions), and a consent to any one assignment or subletting shall not be deemed to be a consent to any subsequent assignment or subletting and this lease shall not, nor shall any interest therein, be assignable, as to the interest of Lessee, by operation of law, without the written consent of Lessor.

Prohibitions against assignment are a valued right in that they enable the lessor to retain a desirable tenant in possession and give a degree of control over the type of individual or entity which may follow him. An assignment made without the consent of the lessor is voidable at the option of the lessor. *Shoemaker v. Shaug,* 5 Wash. App. 700, 490 P.2d 439, 441 (1971).

These clauses, however, are primarily for the benefit of the lessor and can be waived by him. *See Fun Products Distributors, Inc. v. Martens,* 559 P.2d 1054, 1058 (Alaska 1977). One way by which the lessor can waive a covenant forbidding assignment is by accepting rent from the assignee and permitting the assignee to remain in possession. *Crossman v. Fontainebleau Hotel Corp.,* 273 F.2d 720, 728 (5th Cir. 1959); 2 R. Powell, The Law of Real Property ¶ 246[1], at 372.107 (Rohan rev. ed. 1977). In the instant case, Young never explicitly consented to Hall's assignment of

from encumbrances; and (3) that he warrants the quiet and peaceful possession of the premises, and will defend the title to the premises against all persons claiming the premises. The covenants are binding upon a grantor, his heirs and personal representative as if written in the deed.

**5.** Lessee has not challenged the ruling that the Management Agreement constituted an assignment of the Hall–Young lease.

the lease to the Freericks. He did, however, accept rent from them and allowed them to remain in possession of the property for a period of five years. Thus, we hold that Young waived the no–assignment provision of the lease as to the Hall–Freericks assignment, and that this assignment was valid.

### B. Freericks–Jeffcoat Assignment

■ The assignment of the Hall–Young Lease by Freericks to Phylene Jeffcoat, however, stands on different ground. At the time that assignment was made (May 21, 1975), Hendrickson, not Young, was the record owner of the property. By his letters of May 16, 1975, to Hall and Freericks informing them of his intention to terminate for breaching the lease agreement, Hendrickson gave them sufficient notice of his intention to enforce the terms of the lease, in particular the no–assignment clause.[6] Furthermore, there is nothing in the record from which a waiver of the breach of the no–assignment clause could possibly be inferred against Hendrickson. Therefore, we must now consider the implications of Freericks' violation of the Hall–Young Lease by assigning to Jeffcoat.

■ Although the no–assignment clause is primarily for the benefit of the lessor, such clauses do not give to the lessor an absolute right to control assignments of his property. Where the lessor's consent is required before an assignment can be made, he may withhold his consent only where he has reasonable grounds to do so. The Restatement of Property states:

§ 15.2 Restraints on Alienation

. . . . .

(2) A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

Restatement (Second) of Property § 15.2 (1977). This rule only applies, however, where the tenant or lessee has made a *request* to assign the property. *See Food Pantry Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 575 P.2d 869 (1978).

■ In the instant case, no such request was ever made by Freericks; the assignment was made without Hendrickson's consent or knowledge. Thus, the foregoing rule does not apply and we conclude that Freericks' assignment of the Young property was in breach of the Hall–Young Lease. Having reached this conclusion we need not consider whether there were reasonable grounds for withholding consent to the assignment.

The question thus becomes what remedy is appropriate for this breach. The lease specifies in paragraph 17 the consequences of a breach of the lease:

17. That in the event of default in the payment of rent hereunder, or failure to comply with any other covenant or condition hereof, Lessor may declare the tenancy of Lessee terminated and cancelled, and thereupon repossess said property according to law, and hold Lessee liable for any arrearages of rent or damage to said

---

**6.** It is a well–settled principle of law that where a landlord has led the tenant to believe that strict performance of a covenant will not be required, the landlord cannot thereafter demand forfeiture of the lease without first giving the tenant notice that strict compliance with the terms of the lease will be demanded in the future. *See Duncan v. Malcomb*, 234 Ark. 146, 351 S.W.2d 419, 421 (1961); *Powell v. Cannon*, 119 Cal.App.2d 748, 260 P.2d 202, 204 (1953); *Milbourn v. Aska*, 81 Ohio App. 79, 77 N.E.2d 619, 621 (1946).

Although we have found that Hendrickson did give notice of his intent to enforce the

terms of the lease this principle need not be applied in the instant case to support our holding. In *Stephens v. State*, 501 P.2d 759, 762 (Alaska 1972), we held that where a lease contains a non–waiver provision, previous failures to cancel for breach of a covenant do not constitute a waiver, and the landlord may demand strict compliance with a lease provision without giving such prior notice. The Hall–Young Lease contained such a non–waiver clause which provided that "waiver by Lessor of any breach of any term, covenant or condition . . . shall not be deemed to be a waiver of such term."

property; provided that in the event Lessor does not declare this lease terminated upon the breach of a covenant or condition thereof or the failure to pay rentals due hereunder, Lessee shall be obligated to Lessor for six percent interest from the due date thereof, on all rentals due and owing Lessor for a period of longer than thirty (30) days . . .

As the foregoing paragraph expressly applies to all conditions in the lease, it clearly includes the conditions pertaining to assignment. *Robinson v. Weitz*, 171 Conn. 545, 370 A.2d 1066, 1069 (1976).

 Hendrickson contends that having established a material breach on the part of the lessees, he should now be permitted to terminate the lease. Although forfeitures for breach by assignment have been approved if authorized by the language in the lease,[7] "forfeitures are not favored and never enforced in equity unless the right thereto is so clear as to permit no denial."[8] *Shoemaker v. Shaug*, 5 Wash. App. 700, 490 P.2d 439, 441 (1971), *quoting John R. Hansen, Inc. v. Pacific International Corp.*, 76 Wash.2d 220, 455 P.2d 946, 951 (1969). Equity's goal is to do substantial justice to both parties, and where no injustice would be visited upon the injured party, equity will award him compensation rather than decree a forfeiture against the offending party. *Food Pantry Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 575 P.2d 869, 876 (1978). In determining whether forfeiture is required, the trial court is vested with broad discretion. The court must weigh the equities and "fashion a decree to meet the requirements of the situation and to conserve the equities of the parties." *Id.*, 575 P.2d at 876 (citation omitted). The factor which has often been of greatest importance to the court in determining whether a forfeiture should be ordered is the financial loss suffered by the parties. *See State ex rel. Foley v. Superior Court*, 57 Wash.2d 571, 358 P.2d 550, 552

(1961). Where severe financial loss would be incurred by the lessee, the courts have been less likely to order forfeiture of the lease. *Shoemaker v. Shaug*, 490 P.2d at 441 (1971).

Because the trial judge ruled that Hendrickson did not have standing to terminate the lease, it was never decided whether the lessees' breach was so severe as to warrant forfeiture. Further, there is insufficient evidence for us to make a determination whether the equities of the situation, *e. g.*, the financial loss suffered by the lessees balanced against the detriment to Hendrickson's legitimate interests, compel a declaration of forfeiture. In light of the insufficiency of evidence on this matter, we will remand this case to the trial court for a determination on the forfeiture issue.

### III. DAMAGES

As previously noted, the trial judge awarded Phylene Jeffcoat $51,346.85. This award was based on the court's finding that Hendrickson had no interest in the Hall–Young Lease and consequently no right to interfere with Jeffcoat's possession of the property. The damages were computed on the basis of the moneys she would have been entitled to for the period during which Hendrickson remained in control of the property. Since we have held the assignment to be invalid and in violation of the lease, Phylene Jeffcoat's damage award should be vacated. Upon remand, damages should be computed in accord with the trial court's determination on the forfeiture question.

### IV. THE FORCIBLE ENTRY AND DETAINER ACTION

In March, 1979, Hendrickson attempted to obtain possession of the Young property through a forcible entry and detainer action based on Phylene Jeffcoat's non–payment of rent which was due in February, 1979. The trial judge denied the relief requested

---

7. *See, e. g., Robinson v. Weitz*, 171 Conn. 545, 370 A.2d 1066 (1976); *Keystone Properties v. Batey Moving & Storage Co.*, 505 S.W.2d 472 (Tenn.1974).

8. For an example of a situation in which we found a forfeiture to be justified, *see Curry v. Tucker*, 616 P.2d 8 (Alaska, 1980).

on the basis of *res judicata*, citing the earlier decision that Hendrickson lacked standing to sue.

Since we believe that that initial determination was incorrect, the court's later ruling must also be reversed.[9]

In conclusion, since it is clear that Hendrickson did have standing to sue to enforce the terms of the Hall–Young Lease, we remand this case to the trial court for an adjudication of the rights and liabilities of the respective parties in accordance with this opinion.

REVERSED AND REMANDED.

On Rehearing

In *Hendrickson v. Freericks,* 620 P.2d 205 (Alaska 1980), we concluded partly:

> Because the trial judge ruled that Hendrickson did not have standing to terminate the lease, it was never decided whether the lessees' breach was so severe as to warrant forfeiture.

At 212. Accordingly, the case was remanded to the superior court "for a determination on the forfeiture issue." *Id.* at 212.

Phylene Jeffcoat, appellee and cross-appellant, has petitioned for rehearing, calling to our attention the trial court's findings that, facially at least, appear to resolve this issue in lessees' favor. Jeffcoat urges us to reconsider our decision, in light of these findings, and to hold, at the appellate level, that forfeiture of lessees' interest is not warranted.

Despite Jeffcoat's argument, we continue to believe that this issue should be left for initial determination by the trial court, in accordance with our prior mandate.

---

**9.** Hendrickson has also appealed the accuracy of the court's findings of fact. He argues that the trial court adopted a substantial portion of the appellees' [defendants at trial] proposed findings of fact which were submitted to the court. *See Fairbanks Builders, Inc. v. Morton DeLima, Inc.,* 483 P.2d 194 (Alaska 1971). In light of our decision today we find it unnecessary to address the specifics of this argument.